UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JAMES PATTERSON,

Defendant.

13-CR-199 (LAP);
23-CV-4604 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant James Patterson's pro se motions to vacate his sentence pursuant to 28 U.S.C. § 2255, dated May 20, 2023 and to amend or correct judgment nunc pro tunc, dated May 16, 2023.  (See dkt. nos. 244, 243.)[1]

For the reasons set forth below, the Court construes these filings collectively as one motion for compassionate release under 18 U.S.C. § 3582.  In addition, the Court appoints CJA counsel to assist Mr. Patterson in his pending compassionate release motion. Counsel shall file any supplemental motion on behalf of Mr. Patterson by February 20, 2026.  The Government shall respond by March 20, 2026.  Mr. Patterson may submit any reply by April 3, 2026.

## I.   Background

James Patterson and his co-defendants were involved in a drug trafficking operation in Peekskill, New York.  (See dkt. no. 2 at

---

[1]  All citations to page numbers cited herein are to ECF pages.

1.)  As part of the operation, Defendant and his co-defendants sold and distributed various controlled substances including marijuana, heroin, and cocaine base, more commonly known as "crack." (Id.)  On or about January 18, 2012, in service of that drug operation, Defendant shot at a rival drug dealer incident to a bounty issued by a co-defendant (dkt. no. 177 at 24.)

### a. The Federal Indictment and Plea Agreement

On March 20, 2013, the Government charged Defendant by indictment with (1) "conspiring to distribute and possess with intent to distribute 280 grams and more of cocaine base and 1 kilogram and more of heroin, in violation of 21 U.S.C. § 846; and (2) "using, possessing, and discharging a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii)." (Id.)  On October 9, 2013, Defendant pled guilty to Count Two ("the § 924(c) charge") pursuant to a plea agreement with the Government.  (dkt. no. 177.)  In exchange for his guilty plea, the Government agreed to drop the remaining count and stipulated to a sentencing guidelines range of ten years imprisonment, which was the mandatory minimum required under 18 U.S.C. § 924(c)(1)(A)(iii).  (dkt. no. 262 at 1.)

### b. The State Court Plea Agreement

Shortly prior to his federal case, Defendant had been arrested and charged in Westchester County state court for robbery with a

deadly weapon (Id. at 2.)  In light of his pending federal charges, Defendant and his attorneys negotiated a plea agreement with the district attorney and state court whereby Defendant would plead guilty to Robbery in the First Degree pursuant to New York State law. (dkt. no. 263 at 33.)  In exchange for that plea, the district attorney agreed to a determinate eight-year prison sentence that would run concurrently with any sentence imposed by the federal court for the aforementioned § 924(c) count.  (Id.)  On September 19, 2013, Defendant pled guilty in state court pursuant to that agreement.  (Id.)

### c. Sentencings in Federal and State Court

On January 14, 2014, this Court sentenced Defendant to a ten-year term of imprisonment, followed by five years supervised release.  (dkt. no. 227 at 12-13.)  At sentencing, this Court recommended Defendant receive as much time credit toward his sentence as permitted by law.  (Id. at 16.)

On March 13, 2014, Defendant appeared in Westchester County state court for sentencing on the aforementioned state charges. (dkt. no. 263 at 33-34.)  Pursuant to the plea agreement brokered among Defendant, the district attorney, and the state judge, the court sentenced Defendant to eight years imprisonment to run concurrently with the now-imposed ten-year federal sentence. (See id. at 18, 33.)

3

### d. Post-Sentencing

Defendant began serving his state sentence in 2014. In July 2020, Defendant was transferred to federal custody upon the expiration of his state prison term. (Id. at 34.) Prior to that, in or around June 2018, Defendant learned that he would be transferred to federal custody to begin his federal sentence. (See dkt. no. 190 at 1.)[2] Around this time, Defendant also learned that he would need to serve his federal sentence consecutively despite the terms of his state plea agreement. In July 2018, Defendant contacted his defense counsel who then contacted the Government regarding the consecutive sentence issue. (See dkt. no. 263 at 12-16, 22-23.) In a series of correspondence between defense counsel and the Government between March and September 2021, it became clear that the federal statute to which Defendant had pled guilty, 18 U.S.C. § 924(c), prohibited his sentence from running concurrently with any other imposed term of imprisonment. (See

---

[2] The record does not make decisively clear exactly when Defendant learned that the Bureau of Prisons determined that the federal portion of his sentence had to run consecutive to his state sentence. However, in a letter to this Court dated June 5, 2018, Defendant wrote that he thought he should have been in federal instead of state custody given his understanding that his sentences were to run concurrently (dkt. no. 190 at 1.) However, subsequent correspondence between Defendant and defense counsel in July 2018 suggests that that he likely learned they would not run concurrently some time during that same year (see dkt. no. 263 at 22-23.)

4

id. at 12-16.)  Accordingly, although Defendant had been sentenced in federal court before his state sentence had been imposed, and because he had served his state sentence first, the Bureau of Prisons ("BOP") determined that Defendant's federal sentence was required to run consecutive to his state sentence.  (Id. at 13.)

On October 11, 2021, Defendant's defense counsel filed an affirmation in state court stating that the negotiated state plea agreement that promised Defendant a concurrent term of incarceration with his federal sentence "was based on mutual mistake by the parties and by the state court."  (Id. at 20.)  He likewise prepared a motion pursuant to N.Y.C.P.L. § 440.20(1) (that was ultimately submitted pro se by Defendant) requesting the state sentence be set aside in light of the "mutual mistake" that resulted in the procedurally invalid sentence.  (Id. at 34.)  In counsel's affirmation, he averred:

> [a]t no time was it discussed in negotiations with federal authorities or in my discussions with [Defendant] . . . that the two sentences would run consecutively.  It was expected that they would run concurrently by the parties to the federal action and, in fact, a consecutive sentence would not have been acceptable had it even been proposed, which it was not. [Defendant] accepted the plea agreements in the two cases

5

upon the grounds and with the understanding that the two sentences would run concurrently.

(Id. at 19) (emphasis added.)

On June 1, 2022, the state court denied Defendant's motion to set aside the state sentence, which at that point had expired. (See dkt. no. 244 at 11.)  Defendant is now serving his federal sentence and is scheduled for release on July 8, 2027 (dkt. no. 257 at 3.)  He received no credit for the time he served in state custody, effectively making his cumulative time served behind bars eleven years to date.  (Id. at 3.)  The instant motions followed.

### e. Petitioner's Section 2255 Motion and Motion to Amend or Correct Judgment Nunc Pro Tunc

On May 20, 2023, Defendant filed a motion pursuant to 28 U.S.C. § 2255 contending that his defense counsel was ineffective by not informing the Court of his state plea agreement that promised a concurrent sentence to any term of federal imprisonment for his § 924(c) conviction.  (dkt. no. 244 at 4, 12.) Specifically, Defendant argues that his counsel's actions "deprived [him] of adequate representation and subjected him to a harsher sentence" and "caused him to serve a longer term of imprisonment than necessary."  (Id. at 4.)  Defendant also filed a motion to amend or correct judgment nunc pro tunc dated May 16, 2023, asking this Court to amend the federal sentence "to reflect the intention for the federal sentence to be deemed to run

6

concurrent to the state sentence that [Defendant] later received."
(dkt. no. 243 at 1-2.)

At the request of the Government and by order of the Court, defense counsel obtained a waiver of attorney-client privilege from Defendant to allow him to respond to the allegations of ineffective assistance.    (See dkt. no. 257.)    In his sworn declaration, defense counsel averred that he had indeed notified this Court of Defendant's then-pending state matter.    (Id. at 4.) However, the declaration did not expressly indicate that defense counsel made the Court aware of the contents of the state plea agreement which had included the promise of a concurrent sentence. Instead, despite his concession that the promised-concurrent sentence was the product of a "mutual mistake" (see id. at 5; see also dkt. no. 263 at 19), defense counsel now contends that he had not argued at sentencing for a concurrent prison term given the futility of such an argument per § 924(c)'s prohibition. (dkt. no. 257 at 4-5.)

On June 25, 2025, the Government filed an opposition letter to Defendant's § 2255 motion arguing that Defendant's § 2255 motion was untimely and, in any case, failed to show (1) that defense counsel's performance was unreasonable and (2) that such performance had actually prejudiced Defendant.    (dkt. no. 262 at 4-7.)    On or about July 29, 2025, Defendant filed a reply to the

7

Government's opposition letter reiterating, _inter_ _alia_, that defense counsel had led him to believe that his state sentence would run concurrent to his federal sentence and that "a consecutive sentence would not have been acceptable had it been proposed." (dkt. no. 263 at 5.) Defendant still maintains that this caused him to serve a longer sentence for which he seeks relief from this Court. (See _id._ at 8.)

## II. **Legal Standard**

### a. **Motion to Vacate**

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds, _inter_ _alia_, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." _United States v. Bokun_, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations omitted). Section 2255 imposes a one-year statute of limitations period which runs from the latest of the following four events:

(1) the date on which the judgment of conviction becomes final;

8

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(3).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts grants the Court the authority to review and dismiss a § 2255 motion before directing an answer "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rules Governing Section 2255 Proceedings, R. 4(b), 28 U.S.C. app. § 2255; see Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000). The Court, however, is obliged to construe pro se pleadings liberally and interpret them "to raise the strongest arguments they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted); see Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

### b. Motion to Amend or Correct Judgment Nunc Pro Tunc

Under 18 U.S.C. § 3621, the BOP has the sole authority over the calculation of a federal prisoner's sentence. United States

9

v. Wilson, 503 U.S. 329, 334 (1992).  Prisoners may nonetheless request a nunc pro tunc designation "whereby the BOP credits a state sentence, counting the time served in state detention as a part of the federal sentence." United States v. Parish, No. 13 CR. 829 (AT), 2024 WL 3904626, at *4 (S.D.N.Y. Aug. 22, 2024) (citing McCarthy v. Doe, 146 F.3d 118, 120-23 (2d Cir. 1998)). However, a district court may only make a non-binding recommendation.  See McCarthy, 146 F.3d at 120-21.  The BOP will make this designation "only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." United States v. Porter, No. 96-CR-515 (LAP), 2025 WL 1518000, at *2 (S.D.N.Y. May 28, 2025) (quoting BOP Program Statement No. 5160.05, Designation of State Institution for Service of Federal Sentence 4 (Jan. 16, 2003)).

### c. Section 924(c)

Section 924(c) makes it a crime to possess a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  When, in relation to a crime of violence or drug trafficking crime, the firearm is discharged, a defendant convicted under § 924(c) is subject to a ten-year mandatory term of imprisonment.  18 U.S.C. § 924(c)(1)(A)(iii). Additionally, the statute prohibits the imposition of a concurrent term of incarceration "with any other term of imprisonment . . . ." 18 U.S.C. § 924(c)(1)(D)(ii).

10

## III. Discussion

Defendant alleges that at the center of his guilty pleas to the § 924(c) charge and parallel New York state charges was a mutual mistake generated by defense counsel, the state prosecutor, and the state court.  Specifically, the parties in the parallel state case mistakenly negotiated and entered into an agreement for a concurrent eight-year state prison term that was ultimately rendered invalid by § 924(c).  Indeed, while nothing in Defendant's allegations suggest that the federal sentence under § 924(c) is invalid, it may have worked an inequity upon Defendant given the peculiar circumstances surrounding its imposition.  To that end, the Court directs careful attention to the relief sought by Defendant here which, liberally construed, effectively sounds in a request for a reduced sentence.

### a. Timeliness of Defendant's § 2255 Motion

As an initial matter, construing Defendant's motion under § 2255, it is untimely.  Defendant pled guilty in this Court to the aforementioned § 924(c) count and was sentenced to ten years imprisonment, to be followed by five years supervised release.  On May 20, 2023—nearly nine years after his federal sentencing—Defendant filed the instant § 2255 motion challenging the underlying sentence.  He argues that because he filed the instant motion within one year of the June 2022 state court decision denying vacatur of his state sentence, § 2255(f)(4) renders his

11

claim timely. (dkt. no. 244 at 11.) However, § 2255 "is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). Instead, § 2255(f)(4) "resets the limitations period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued." Id. Therefore, "the proper task . . . is to determine when a duly diligent person in petitioner's circumstances would have discovered" the purported error. Id.; see also United States v. Wright, 945 F.3d 677, 684 (2d Cir. 2019) (same).

To be sure, by or around July 2018, Defendant had learned that his sentence would have to run consecutively despite his understanding to the contrary. (see dkt. no. 263 at 22-23.) His instant claim, therefore, would have accrued in 2018. Yet, Defendant did not file his § 2255 motion until May 20, 2023, nearly five years after that discovery. (dkt. no. 244 at 12.) Accordingly, Defendant's one-year limitations period started running no later than the 2018 discovery of the consecutive sentencing issue, during which time he failed to seek § 2255 relief. On that basis, Defendant's motion, construed as raising a claim under § 2255, is untimely and therefore foreclosed from review in that respect.

12

### b. Defendant's Motion to Amend or Correct Judgment <u>Nunc</u> <u>Pro</u> <u>Tunc</u>

Defendant also asks this Court to order that his now discharged state detention be made to retroactively run concurrently with his federal sentence. Even if the Court were to make that recommendation to the BOP, such a gesture would almost certainly be futile. As discussed above, Defendant was sentenced to prison upon guilty plea to a § 924(c) charge. (dkt. no. 227 at 12-13.) That statute prohibits the imposition of a concurrent term of imprisonment. 18 U.S.C. § 924(c)(1)(D)(ii). Accordingly, the Court's recommendation (which, by its nature, would not bind the BOP) to retroactively redesignate Defendant's state custody as the site of his current federal custody would be of no avail to Defendant.

### c. Designating the motion as arising under 18 U.S.C. § 3582

The Court is cognizant of the unsettling allegations surrounding Defendant's plea. Defendants asserts that he chose to forgo his constitutional right to be tried before a jury of his peers and hold the Government to their proof beyond a reasonable doubt. In giving up that right, he agreed to plead guilty in exchange for what he and his defense counsel thought would be a concurrent sentence, only to be told otherwise after the fact, in spite of defense counsel's own admission that the plea was a mutual

13

mistake.  (See dkt. no. 190 at 19.)  Now, to remedy the situation, Defendant seeks vacatur of his sentence to, in effect, reduce his term of imprisonment to reflect what he originally bargained for before his guilty plea.  His nunc pro tunc motion, liberally construed, asks the same.  (dkt. no. 243 at 1-2 ("Defendant respectfully move[s] this court to amend the judgment, to reflect the intention for the federal sentence to be deemed to run concurrent to the state sentence he later served."))

Had Defendant actually served his sentences concurrently, he today could have been a free man, serving out his term of supervised release.  To that end, this Court may construe Defendant's arguments as a plea for a reduction in sentence pursuant to 18 U.S.C. 3582(c)(1)(A).  This reading is even stronger when Defendant's § 2255 motion is read alongside his nunc pro tunc motion.

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

14

whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

The Court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the § 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. See id.

The Sentencing Commission, prior to the First Step Act's amendment of § 3582, had promulgated a policy statement—section 1B1.13 of the Guidelines—concerning sentence reductions under § 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction. U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n, annotated 2023). The Court of Appeals, however, held that this policy statement was applicable only to compassionate release

15

motions brought by the Bureau of Prisons, not those brought by defendants. See United States v. Brooker, 976 F.3d 228, 234-36 (2d Cir. 2020). As a result, the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Id. at 236. Even though § 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v. Rodriguez, No. 16-CR-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." United Stats v. Corbett, No. 10-CV-184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. While the policy statement retains many of the traditional bases for a reduction in sentence (e.g., medical circumstances, age, family circumstances, being a victim of abuse

16

while in custody), § 1B1.13(5) carves out "other reasons" that may permit a finding of extraordinary or compelling circumstances that could merit a sentence reduction, such as when:

> [t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(5).

Without deciding here, this Court reads Defendant's motions as perhaps raising an extraordinary or compelling circumstance that may form the basis for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A).

Notably, the circumstances surrounding the "mutual mistake" that resulted in Defendant's consecutive sentence standing alone may not constitute "extraordinary and compelling reasons" under the current law of this Circuit. See Fernandez v. United States, 104 F.4th 420, 426-32 (2d Cir. 2024), cert granted, 145 S. Ct. 2731, 2732 (2025) (No. 556, 2025 Term). In any event, the Court need not and does not make that determination in this order. The Court does, however, at this juncture read Defendant's arguments, despite their labels, as asking for a reduction in his sentence. Indeed, this Court's authority to entertain such a request is generally limited to the avenues prescribed in § 3582(c)(1)(A) and

17

by extension the Sentencing Guidelines and their applicable policy statements. See United States v. Brooker, 976 F.3d 228, 235 (2d Cir. 2020). Accordingly, because Defendant effectively seeks a remedy that would result in a reduction of his prison term, the Court construes these filings collectively as a motion for a sentence reduction under 18 U.S.C. § 3582. See, e.g., Cuff v. United States, 2019 U.S. Dist. LEXIS 33291 (Feb. 28, 2019, S.D.N.Y.) (construing a defendant's § 2255 motion as a request for sentencing reduction pursuant to § 3582 given, inter alia, the defendant's arguments seeking retroactive application of the Fair Sentencing Act of 2010 effectively amounted to a plea for a modification of the originally imposed sentence); see also Castro v. United States, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize [it] in order to place it within a different legal category").

While the Supreme Court has said that a district court may not reconstrue a motion as a § 2255 petition without giving the petitioner an opportunity to amend or withdraw his petition (see Castro, 540 U.S. at 377), neither it nor the Court of Appeals has disallowed the converse—namely, reconstruing a § 2255 petition as a different motion (e.g. a § 3582 petition). Cf. Simon v. United States, 359 F.3d 139, 145 (2d Cir. 2004) (holding that "the district court's sua sponte recharacterization of his § 3582 motion

18

as a § 2241 petition was improper" given the risk of petitioner being barred from a future successive petition.).  Indeed, unlike the strict statutory bar to successive petitions pursuant to §§ 2241 and 2255 in the habeas context, nothing in the plain language of § 3582 prohibits a petitioner from seeking relief more than once.  See 18 U.S.C. § 3582.  Thus, to the degree Defendant believes there are factors warranting a reduction in his sentence pursuant to § 3582(c)(1)(A), the Court invites him to state such grounds.

### d. Appointment of Counsel

A defendant has no right to counsel when filing a motion for a reduction of sentence under Section 3582(c).  United States v. Fleming, 5 F.4th 189, 193 (2d Cir. 2021).  The decision to appoint counsel is left to the discretion of the district court, which may consider the merits of the defendant's motion as a "significant factor in the exercise of that discretion."  United States v. Reddick, 53 F.3d 462, 465 n.2 (2d Cir. 1995).  In view of the circumstances detailed above, the Court will appoint CJA counsel to assess Defendant's legal options as to the now reconstrued § 3582 motion.  See United States v. Reyes, No. 14-cr-483 (LAP), 2023 WL 8368885, at *4 (S.D.N.Y. Dec. 4, 2023) (appointing counsel to explore legal options for a sentence reduction.).  Accordingly, the Court appoints the standby, unconflicted, CJA counsel on duty at the time of docketing of this order.

19

## IV.  Conclusion

For the reasons set out above, the Court construes Defendant's concurrent § 2255 motion and motion to amend or correct judgment nunc pro tunc as one motion under § 18 U.S.C. § 3582.  The Court appoints CJA counsel to assist Mr. Patterson in this pending motion.  The Clerk of the Court shall notify CJA counsel of the appointment.

Counsel shall file any supplemental motion on behalf Mr. Patterson by February 20, 2026.  The Government shall respond by March 20, 2026.  Mr. Patterson may submit any reply by April 3, 2026.

The Clerk of Court is directed administratively to close the civil case docketed at 23-CV-4604.  All further papers filed or submitted for filing shall include the criminal docket number herein, 13-CR-199, and will be docketed in the criminal case.

The Clerk of Court is directed to mail a copy of this order to Defendant, noting service on the docket.

SO ORDERED.

Dated:    New York, New York
          December 15, 2025

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge